950 So.2d 184 (2006)
Marvin PARKS, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-00092-COA.
Court of Appeals of Mississippi.
June 13, 2006.
*185 Stephanie L. Mallette, attorney for appellant.
Office of the Attorney General by John R. Henry, attorney for appellee.
Before LEE, P.J., GRIFFIS and ROBERTS, JJ.
GRIFFIS, J., for the Court.
¶ 1. Marvin Parks was convicted of aggravated assault. On appeal, Parks asserts that the trial court erred: (1) in admitting a .22 caliber pistol into evidence, and (2) by denying Parks' motion for a new trial based on the verdict being against the overwhelming weight of the evidence. We find no error and affirm.

FACTS
¶ 2. On March 1, 2003, Shameka Luckett was shot twice once in the right back of her neck and once in the right side of her *186 back lumbar region. Shameka was treated at the Montfort Jones Memorial Hospital in Kosciusko and was transferred to the University of Mississippi Medical Center in Jackson.
¶ 3. Luckett and Parks gave different accounts of the events that led up to the shooting. Luckett testified that she and her cousin went to the bingo hall in Kosciusko that night to play bingo. While Luckett was playing bingo, an employee of the bingo hall notified Luckett that she had a phone call in the office. Luckett left the table to take the phone call. Luckett testified that it was Kristian Jones. Jones wanted to know what Luckett was doing and what she was planning to do later on that night.
¶ 4. Luckett testified that she returned to bingo game after she spoke with Jones. She used her cell phone to try and call another friend. Luckett then went outside to let her phone charge and try the call again. According to Luckett, when she went outside the bingo hall, she saw Jones coming toward her. Jones asked her if she could go anywhere, and Luckett responded that she could not. Jones then told her to walk up to the car and Luckett agreed. Luckett said that Jones was driving a two-door, maroon car, without a radio that belonged to Marvin Parks. When she reached the car Luckett testified that Jones pushed her into the car.
¶ 5. After Luckett got in the car, the pair picked up Marvin Parks. After Parks got in the car they stopped at an Exxon station and put gas in the car. They then drove to Demond Howard's house. Parks went inside. When he returned to the car, Parks said that Howard was not feeling well and they should come back in an hour.
¶ 6. They went to Goodman to a club and some housing projects. Luckett testified that she did not see anyone she knew at the club. At the housing projects, she saw Parks' brother Red and Michael Johnson.
¶ 7. After leaving the projects, they returned to Demond Howard's house. Parks got out of the car and knocked on the window. Howard did not come to the door. Luckett testified that she asked Jones to take her home. Luckett said that Jones ignored her request, and Parks drove the car to a dirt road near McAdams High School.
¶ 8. While driving the back roads of Attala County, they had car trouble. They stopped on top of a hill, put water in the car and waited for it to cool down. While the car cooled down Jones and Parks questioned Luckett about a court case in which the three were involved. The court date was nearing. Jones and Parks were interested in whether Luckett knew when the court date was and if she had spoken to her lawyer. Parks then suggested that they walk to his mother's house which was nearby.
¶ 9. After they left the car and began walking, three other cars drove down a nearby road. Luckett said she heard three gunshots from the direction of the three cars, and then all three drove away. Luckett testified that she was scared and wanted to go back to the car. Luckett said that they all went back to the car, and Parks and Jones did something to the car to get it to crank. Then, they drove toward Luckett's house but turned down another dirt road near a cemetery. Luckett said that Parks and Jones parked the car and walked with her toward her uncle's house.
¶ 10. While they were walking to Luckett's uncle's house, Luckett testified that Parks ran up behind her and shot her in the back and shoulder. Luckett testified that she played like she was dead, and Parks "went for my head and clicked the gun three times." Luckett then identified *187 the gun that the prosecutor produced as the gun Parks used to shoot her. Luckett recognized the gun because it had a white handle and other distinguishable features. Luckett also testified that earlier that evening Parks had fired the gun while they were stopped to let the car cool down.
¶ 11. After Luckett was shot, she went to a nearby house where Kelsey Harmon and his wife let her in and called for help. Luckett told Kelsey Harmon and his wife Vickie that Kristi Jones and Marvin Parks shot her.
¶ 12. Parks offered an entirely different account of the events. Demond Howard testified that Parks and Jones were with him most of the night, and he never saw Luckett. Howard testified that, in the early evening of February 28, he was with his daughter in Durant. Howard stated that he went to their home in Kosciusko around 9:00 p.m and picked up Parks and Jones. According to Howard, Parks and Jones were with him until after 11:00 p.m. that night, and Parks' maroon Thunderbird was at his house all night. Howard testified that Parks' car was not running. Howard said that he was working to repair it, and that when Parks' mother came to pick it up, after Parks was arrested, he had to do some work on it before it would crank.

ANALYSIS
I. Whether the trial court erred in admitting a .22 caliber pistol into evidence.
¶ 13. The standard of review for a trial judge's decision to admit or exclude evidence is abuse of discretion. Graves v. State, 492 So.2d 562, 565 (Miss.1986). Evidence that is either relevant or shows the res gestae of a crime is admissible. Wade v. State, 583 So.2d 965, 967 (Miss.1991). Relevant evidence is evidence that tends to show whether a fact of consequence to an action either occurred or did not occur. Id. (citing Collins v. State, 513 So.2d 877, 878 (Miss.1987)). Evidence is admissible as showing the res gestae of a crime, if the evidence tends to show part of the entire transaction constituting the crime. Id.
¶ 14. Parks filed a motion to exclude the weapon on the basis that it was irrelevant and should be excluded, pursuant to Mississippi Rules of Evidence 401 and 402. Further, Parks asserted that the State could not provide a nexus between the weapon, discovered approximately two miles from the alleged crime scene, and the crime.
¶ 15. The trial judge denied the motion. The trial judge held that whether or not the victim could identify the weapon was a question of fact for the jury, and she was subject to cross-examination on her identification. Parks argues that the trial judge abused his discretion in failing to suppress the admission of the gun.
¶ 16. A weapon used in the commission of a crime may be admitted where the victim identifies it. Agnew v. State, 783 So.2d 699, 704(¶ 17) (Miss.2001). Luckett testified that she had seen the weapon earlier that night, and again at the time she was shot with it. Luckett was cross-examined about her failure to describe the gun to the officers.
¶ 17. Whether or not she was able to correctly identify the gun was a question for the jury. The weight and credibility to be afforded to the testimony were matters for the jury. Id. The trial judge did not abuse his discretion in admitting the weapon into evidence. Therefore, we find no error and affirm.
II. Whether the verdict was against the overwhelming weight of the evidence.
¶ 18. In determining whether a jury verdict is against the overwhelming *188 weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Montana v. State, 822 So.2d 954, 967-68(¶ 61) (Miss.2002). Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. Id.
¶ 19. When this Court analyzes a jury's verdict to determine whether it goes against the overwhelming weight of the evidence, we must keep in mind that the jury is the ultimate finder of fact. Langston v. State, 791 So.2d 273, 280(¶ 14) (Miss.Ct.App.2001). This Court does not have the task of re-weighing the facts in each case to go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible. Id.
¶ 20. The jury heard both versions of the events. Shameka Luckett testified that Parks shot her. Luckett's testimony was corroborated by Vickie and Kelsey Harmon, who aided Luckett after she was shot. Parks' defense was presented through Demond Howard, an alibi witness.
¶ 21. It is for jurors to resolve conflicts in testimony. McGee v. State, 828 So.2d 847, 850(¶ 13) (Miss.Ct.App.2002) (citing Jackson v. State, 614 So.2d 965, 972 (Miss.1993)). "The jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Langston v. State, 791 So.2d 273, 280(¶ 14) (Miss.Ct.App.2001) (citing Billiot v. State, 454 So.2d 445, 463 (Miss.1984)). This Court may not make an assessment on the credibility of the trial witnesses as that is a task for the jury. Id. (citing Kinzey v. State, 498 So.2d 814, 818 (Miss.1986)).
¶ 22. In our review of the evidence, we do not find that the trial judge abused his discretion in failing to grant a new trial. The verdict in this case is not contrary to the overwhelming weight of the evidence and allowing it to stand will not constitute an unconscionable injustice. Therefore, we affirm.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF ATTALA COUNTY OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO ATTALA COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., SOUTHWICK, IRVING, CHANDLER, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.