## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2018-KA-01501-COA

**CHARLES LESTER CHASE A/K/A CHARLES CHASE**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                               **APPELLEE**

DATE OF JUDGMENT:              09/26/2018
TRIAL JUDGE:                         HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:   RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:       OFFICE OF STATE PUBLIC DEFENDER
                                          BY: GEORGE T. HOLMES
ATTORNEY FOR APPELLEE:        OFFICE OF THE ATTORNEY GENERAL
                                          BY: JOHN R. HENRY JR.
DISTRICT ATTORNEY:               JOHN K. BRAMLETT JR.
NATURE OF THE CASE:             CRIMINAL - FELONY
DISPOSITION:                        AFFIRMED - 02/18/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., WESTBROOKS AND McCARTY, JJ.

### WESTBROOKS, J., FOR THE COURT:

¶1.     On March 12, 2018, a Rankin County grand jury indicted Charles Lester Chase for one count of domestic aggravated assault in violation of Mississippi Code Annotated section 97-3-7(4) (Rev. 2014).  On July 31, 2018, following a jury trial, Chase was found guilty of domestic aggravated assault as charged in the indictment.  The trial court sentenced Chase to serve a term of twenty years in the custody of the Mississippi Department of Corrections (MDOC) and assessed him fines and fees in an order entered on September 26, 2018.  Chase then filed a post-trial motion for judgment notwithstanding the verdict (JNOV) or,

alternatively, a new trial, on September 28, 2018, which the court denied. Chase now appeals, and finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. In the early morning hours of November 23, 2017, University of Mississippi Medical Center (UMMC) police officer Maurice Shaffer found April Ainsworth seated on a corner sidewalk near the hospital. Officer Shaffer testified that Ainsworth was covered in a blanket but barefoot, and she did not have on a coat, hat, or gloves. He noted severe injuries to Ainsworth's body. Officer Shaffer stated that Ainsworth was badly bruised all over her feet and hands—barely able to move her left hand—and that her face was swollen and covered in blood. After ascertaining Ainsworth's name and pertinent information, Officer Shaffer was told that Charles Chase, Ainsworth's husband, was responsible for the injuries and had beaten her at her Brandon home the night before. Noting the situation as one of the "more severe" domestic-violence cases he had seen, Officer Shaffer then called an ambulance to come transport Ainsworth to the emergency room for treatment.

¶3. Joshua Bradford, the UMMC nurse who examined Ainsworth in the emergency room, noted a number of injuries, including a large laceration on the top of her head, a swollen black eye, torso bruises of varying ages, swelling in both hands, bruising and scrapes on the front and back of Ainsworth's body, and "circumferential bruising" about her ankles. When questioned by Bradford, Ainsworth reported that she had been tied up and restrained for an extended period, dragged down a hallway, struck with a hammer (on her hands), and that her head had been slammed in an oven door. Ainsworth testified that the beating had lasted for

2

approximately two days before she was "dumped" at the hospital. She again identified Chase as the party responsible for her injuries and stated that he had left her on the curb. Bradford then notified law enforcement.

¶4. UMMC physician Dr. Jeffery Orledge also evaluated Ainsworth that day and treated her for multiple rib fractures, contusions, and lacerations. He testified that Ainsworth also had a broken foot. Dr. Orledge testified that Ainsworth told him that her husband hit her with a pitcher, punched her, and threw her out of the car near UMMC.

¶5. Sergeant David Cannon of the Florence Police Department was dispatched to UMMC following Bradford's report. Cannon testified that he was familiar with Ainsworth and Chase and had responded to a prior domestic-disturbance report concerning the pair earlier in the year. Sergeant Cannon documented Ainsworth's injuries and took her statement. Based on the information he collected, Sergeant Cannon obtained a warrant for Chase's arrest and a search warrant for Ainsworth's home, where the incident was alleged to have occurred. Upon execution of the search warrant, Sergeant Cannon discovered the victim's house in disarray. In the clutter, Sergeant Cannon found and collected a hammer with hair and blood, which later was confirmed as belonging to Ainsworth. There were also destroyed cell phones, dolls, a vehicle with a busted window, and blood on the front of the stove.

¶6. Chase was ultimately located and arrested at the Brandon residence of his girlfriend, Amelia Church. On March 12, 2018, a Rankin County grand jury indicted Chase for one count of domestic aggravated assault in violation of Mississippi Code Annotated section 97-3-7(4).

¶7. At trial, the State's evidence included redacted recordings of telephone conversations between Chase and Church. The recordings were obtained by authorities while Chase was an inmate at the Rankin County jail. Amanda Thompson, an employee of the Rankin County Sheriff's Department, provided testimony to authenticate the recordings. Thompson provided a detailed description of the jail's telephone system and identified Chase's voice from the recordings. Sergeant Cannon opined that during the conversations, Chase and Church discussed details of the assault against Ainsworth. Sergeant Cannon also testified regarding the findings of his investigation. On July 31, 2018, following a jury trial, Chase was found guilty and on September 26 was sentenced to serve a term of twenty years in the custody of the MDOC. Chase filed a post-trial motion for a JNOV or, alternatively, a new trial, on September 28, 2018, which the court denied. Aggrieved, Chase appeals.

## DISCUSSION

### I. Discovery Photographs After Deadline

¶8. Chase argues that the trial court committed reversible error by allowing the admission of photographs of Ainsworth's injuries after the discovery deadline. The State acknowledges that the "supplemental" evidence was provided outside the deadline but contends that because Chase's defense counsel did not lodge a claim of surprise or undue prejudice, the issue was waived.

¶9. Chase relies on Uniform Civil Rule of Circuit and County Court Practice 4.03(A), which provides guidance on discovery matters in civil cases but has no application in the instant criminal appeal. Rule 17.9(b) of the Mississippi Rules of Criminal Procedure

4

addresses discovery violations in criminal proceedings and states, in pertinent part:

> If, during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these Rules and the defense objects to the introduction for that reason, the court shall:
>
>> (1)    Grant the defense a reasonable opportunity to interview the newly discovered witness and/or examine the newly produced documents, photographs or other evidence.
>>
>> (2)    If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence, grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence, or grant a mistrial. . . .

¶10.    In the case sub judice, Chase's trial counsel objected to the introduction of the photographs but failed to raise a claim of unfair surprise or undue prejudice as required to establish a basis for a continuance or mistrial under Rule 17.9(b). In response to the defense's trial objection, the State noted that it submitted the photographs at issue to the defense twenty-eight days prior to Chase's trial; Chase's trial counsel offered no rebuttal.

¶11.    We have long held that trial courts are vested "with substantial discretion" over these matters, and we will "revers[e] a trial court's decision regarding discovery violations only upon finding an abuse of discretion." *Hunter v. State*, 187 So. 3d 674, 678 (¶15) (Miss. Ct. App. 2016) (quoting *Gray v. State*, 799 So. 2d 53, 60 (¶26) (Miss. 2001); *Kornegay v. State*, 816 So. 2d 405, 408 (¶8) (Miss. Ct. App. 2002)).

¶12.    Here, Chase fails to demonstrate any unfair surprise or undue prejudice resulting from the introduction of the photographs. The trial court was within its discretion and committed

no error by admitting the photographs into evidence. This issue is without merit.

¶13. Chase also urges that the photographs should have been excluded as cumulative evidence pursuant to Mississippi Rule of Evidence 403. Chase did not object on this basis at trial and therefore waived any assignment of error on appeal. *See Walker v. State*, 913 So. 2d 198, 217 (¶49) (Miss. 2005) ("Failure to raise an issue at trial bars consideration on an appellate level."). Procedural bar notwithstanding, we find this issue is without merit. Rule 403 provides:

> The court *may* exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

(Emphasis added). Rule 403, although applicable, is permissive and thereby subject to the trial court's discretion. Chase accurately notes the trial court's acknowledgment that the photographs were cumulative, but to no avail for purposes of finding reversible error. After a thorough review, we find that the court did not abuse its discretion, and we accordingly find no error.

## II. Denial of Motion in Limine

¶14. In this assignment of error, Chase argues the trial court erred by denying his first motion in limine, which would have prohibited any mention of Chase's previously unadjudicated domestic-violence charge. Chase claims that by allowing Ainsworth to testify about the prior alleged abuse, the court (1) subjected him to double jeopardy in violation of the state and federal constitutions (and thereby Mississippi Rule of Evidence 402); (2) subjected him to extreme prejudice; and (3) confused the jury as to what act occurred in the

6

prior incident.

¶15. "A motion in limine 'should be granted only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury.'" *Hersick v. State*, 904 So. 2d 116, 127 (¶41) (Miss. 2004) (quoting *McGilberry v. State*, 797 So. 2d 940, 942 (¶12) (Miss. 2001)). We review the trial court's decision for abuse of discretion. *Id.* at (¶42).

¶16. A review of the record reveals that Chase's first motion in limine, filed on June 22, 2018, sought the exclusion of any mention of Chase's previous simple-assault domestic charge because it had not yet been adjudicated and would be more prejudicial than probative in violation of Mississippi Rule of Evidence 403. However, Chase argues a different basis on appeal. Because Chase failed to argue the current basis before the trial court, he is procedurally barred from bringing the claim before us. *Walker*, 913 So. 2d at 217 (¶49).

¶17. Nonetheless, we again find that Chase's arguments lack merit. Chase's issue hinges on the court's alleged violation of the double jeopardy clauses found in the state and federal constitutions. Chase reasons that by allowing Ainsworth to testify in detail about the prior incident of alleged domestic abuse, the court violated the double jeopardy provisions of the respective constitutions and thereby Rule 402, which prohibits the admissibility of relevant evidence when the constitutions provide otherwise.

¶18. The Fifth Amendment of the United States Constitution provides, in relevant part, "No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb

7

. . . ." The double jeopardy clause found in Article 3, Section 22 of the Mississippi Constitution provides, "No person's life or liberty shall be twice placed in jeopardy for the same offense; but there must be an actual acquittal or conviction on the merits to bar another prosecution."

¶19. Although the prior domestic incident was mentioned in testimony, Chase was not tried for the alleged simple assault, nor was the jury asked to render a finding of innocence or guilt with regard to the prior unadjudicated incident. In fact, the trial court gave a limiting instruction, which is discussed in greater detail in the latter portion of this opinion: jury instruction number 5 specifically stated that "acts testified about concerning the allegations of prior domestic assaults are acts relating to charges for which the defendant is not presently on trial and are to be considered only for the limited purpose . . . ." Thus we find that no jeopardy attached with regard to the prior domestic incident for purposes of a constitutional right being violated and that the court did not violate Rule 402. This issue is without merit.

¶20. Likewise, Chase fails to set forth evidence that Ainsworth's testimony about the prior incident resulted in extreme prejudice or jury confusion. Chase concedes on appeal that the court considered the testimony under Mississippi Rules of Evidence 401, 403, and 404(b). Finding no abuse of discretion, we affirm the trial court's denial of Chase's first motion in limine.

### III. Opinion Testimony

#### A. Sergeant Cannon's Testimony

¶21. Chase asserts that the trial court erroneously allowed Sergeant Cannon to give his

opinion about the subject of the recorded conversations between Chase and his girlfriend (Church). Chase alleges that Cannon's lay opinion regarding the subject matter of the recordings was pure conjecture and improper under Mississippi Rule of Evidence 701.

¶22. Rule 701 allows the admission of non-expert opinion testimony when the content is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."

¶23. Chase attempts to advance his argument by distinguishing the facts of the current case from the circumstances in *Wells v. State*, 604 So. 2d 271 (Miss. 1992), and *Ratliff v. State*, 879 So. 2d 1062 (Miss. Ct. App. 2004). In *Wells*, the lay witness, a store owner, narrated surveillance videos of an employee charged with embezzlement and without first-hand knowledge or expert designation, offered a lay opinion regarding the employee's deviations from standard operating procedures. *Wells*, 604 So. 2d at 279. Similarly, in *Ratliff*, a store owner offered lay opinion regarding the actions of a shoplifter caught on surveillance without the benefit of witnessing the alleged theft first-hand. *Ratliff*, 879 So. 2d at 1065 (¶8). In both cases, the Court held that the testifying parties' lack of first-hand knowledge rendered their opinion-testimonies improper but that any error was "at best, harmless" in light of the "totality of the evidence before the court" in each respective case. *Wells*, 604 So. 2d at 280; *Ratliff*, 879 So. 2d at 1066 (¶10).

¶24. With the exception of one question regarding Chase's motive, Cannon's lay opinion about the recordings was admitted without contemporaneous objection and is barred from

9

consideration on appeal. *Bolden v. State*, 23 So. 3d 491, 497 (¶16) (Miss. Ct. App. 2009) ("It is axiomatic that a litigant is required to make a timely objection, and if no contemporaneous objection is made, the error, if any, is waived." (internal quotation marks omitted) (quoting *Smith v. State*, 797 So. 2d 854, 856 (¶7) (Miss. 2001))).

¶25. The admission of Cannon's testimony, although reminiscent of the witnesses in *Wells* and *Ratliff*, is at best, harmless error, considering the other evidence favoring conviction. *Wells*, 604 So. 2d at 280; *Ratliff*, 879 So. 2d at 1066 (¶10). The jury here was presented with overwhelming evidence in support of Chase's conviction, including Ainsworth's DNA found on a hammer used in the assault and corroborating testimony from Ainsworth and the witnesses she encountered on the date of the incident. Accordingly, we find this claim is without merit.

### B. Testimony of Joshua Bradford and Jeffery Orledge

¶26. Chase also alleges that the court committed reversible error by allowing Ainsworth's treating medical personnel, nurse Bradford and Dr. Orledge, to render their opinions absent an expert designation.

¶27. Mississippi Rule of Evidence 702 allows a witness to be qualified as an expert by "knowledge, skill, experience, training, or education . . . " and provides that experts

> may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Here, Chase concedes that both witnesses gave extensive testimony about their training and experience as emergency-room medical providers. He further explains that their testimony provided context for the medical evaluation and treatment Ainsworth received at UMMC. There was no objection to their scientific "knowledge, skill, experience, training, or education," M.R.E. 702, and likewise, there is no question that both providers were qualified to offer their testimony about Ainsworth's initial presentation and treatment in the emergency room on November 27. However, as Chase correctly highlights, the prosecution failed to tender Bradford and Dr. Orledge as experts before eliciting their respective opinion-testimonies—a procedural failure for certain. But in *McBeath v. State*, 739 So. 2d 451, 453 (¶8) (Miss. Ct. App. 1999), this Court addressed a similar situation and found that the State's failure to follow the outlined procedures for expert designation "does not per se constitute reversible error." (Quoting *McNeal v. State*, 617 So. 2d 999, 1008 n.2 (Miss. 1993)).

¶28. In *McBeath*, this court addressed the issue of expert testimony tendered by an abuse victim's treating dentist, whom the State failed to tender as an expert at trial. *Id.* at (¶¶6, 8). As in the present case, the doctor testified over objection to the "serious" nature of the injuries. *Id.* at (¶6). The Court deferred to the trial court's sound discretion regarding "whether an individual is qualified to testify as an expert" and determined that "[t]his Court does not reverse such decisions absent a showing that this discretion has been abused, that is, that the witness was clearly not qualified." *Id.* at 453-54 (¶9) (quoting *Cooper v. State*, 639 So. 2d 1320, 1325 (Miss. 1994)). Here, we find no such abuse of discretion by the trial court.

¶29. Chase also asserts a discovery violation occurred because the expert witnesses were

not designated to all attorneys of record at least sixty days prior to trial, citing Uniform Civil Rule of Circuit and County Court Practice 4.06(a). Because the civil rules of procedure have no application here, we find this issue is without merit.[1]

## IV.    Admission of Jail Telephone Recordings

¶30.    In his fourth assignment of error, Chase argues that the trial court erred by admitting the recordings of his conversations with Church over his objection at trial. Chase relies on our ruling in *Gabriel v. State*, 270 So. 3d 58 (Miss. Ct. App. 2018), and claims the court failed to consider the ruling as it related to his objection.

¶31.    "This Court reviews the trial court's decision to admit or exclude evidence under an abuse of discretion standard of review." *Id.* at 61 (¶14) (quoting *Smith v. State*, 986 So. 2d 290, 295 (¶12) (Miss. 2008)). "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence." *Id.* (quoting *Jefferson v. State*, 818 So. 2d 1099, 1104 (¶6) (Miss. 2002)). "Unless the judge abuses this discretion so as to be prejudicial to the accused, the Court will not reverse this ruling." *Id.*

¶32.    In *Gabriel*, the defendant appealed the trial court's admission of his recorded interview with police investigators. *Id.* at (¶13). We found that the trial court had indeed abused its discretion by admitting irrelevant and highly prejudicial evidence (i.e., the interview) in violation of Mississippi Rules of Evidence 401 and 403. Distinguishable from the case at bar, incriminating statements made by Gabriel in the recording lacked probative value and

---

[1] We note that at the time of Chase's 2018 trial, the Mississippi Rules of Criminal Procedure were in effect. Mississippi Rule of Criminal Procedure 17.2 governs disclosure by the prosecution and does not include a sixty-day requirement for disclosure.

12

provided no evidence of the charges against him. *Id*. at 62 (¶21).

¶33.    Here, not only are the statements made in the recording of Chase and Church's conversation relevant, they are highly probative and seemingly reveal Chase discussing the exact crime for which he was charged. As an added measure to protect Chase from undue prejudice, the court required the State to redact the recording and remove what it determined to be unduly prejudicial content. Chase made no objection to the redactions. We find no abuse of discretion by the trial court and thus no error.

¶34.    Chase further argues that he was especially prejudiced by the portion of the recordings that revealed his status as an inmate (at the time of the recorded calls) to the jury. Citing *Payton v. State*, 897 So. 2d 921 (Miss. 2003), Chase likens the revelation to an inmate being brought before the jury in restraints. Chase sets forth no authority to support this purported resemblance, and we have found none. We would note, however, that the court in *Payton* rejected the defendant's argument and found that although jurors saw Payton in chains, the violation was non-prejudicial. *Id.* at 932 (¶17). Chase claims that even absent case precedent, he has made a prima facie showing of prejudice. We disagree. Chase, like Payton, has "presented no evidence which indicates that the jurors were not fair and impartial." *Id*. This claim has no merit and fails.

## V.    Court Instruction on Evidence Presentation

¶35.    Chase avers that the trial court prejudiced him by improperly advising the State on how to present its evidence. At trial, no objections were raised on this point; thus, the issue is waived. *Bolden*, 23 So. 3d at 497 (¶16).

¶36. A review of the transcript reveals the claim is baseless. The transcript excerpts cited by Chase contradict this claim and instead call attention to the trial court's concern and careful consideration over which portions of the telephone call between Chase and Church warranted redaction. The court engaged in a lengthy exchange with the State to ensure the exclusion of irrelevant portions of the recording, which likely would have resulted in undue prejudice to Chase. There is no evidence in the record to support Chase's current allegation. In fact, Chase and his trial counsel were present for the discussions and expressly confirmed the lack of objection to the court's ruling regarding the redactions. This claim is procedurally barred and without merit.

## VI. Improper Authentication and Identification

¶37. Chase raises two issues under his sixth assignment of error: (1) the State's reference to Amelia Church as Amelia "Chase" while examining Sergeant Cannon and (2) the authentication of the telephone-call recordings from the jail.

¶38. Chase first argues that the State caused juror confusion about Church's relationship to Chase by calling Church by the wrong last name during questioning. No issue or objection was raised on this point at trial, thus the claim is waived. *Id.* Further, Chase cites no authority in support of this argument; accordingly, we decline review of this issue. M.R.A.P. 28(a)(7).

¶39. Chase also claims the telephone recordings from the jail were improperly authenticated and raised multiple objections to their admission at trial. On appeal, Chase cites Mississippi Rule of Evidence 901(b)(6), which specifically addresses authentication of evidence about a telephone conversation. In instances involving a telephone conversation, "evidence that a call

was made to the number assigned at the time to . . . a particular person, if circumstances, including self-identification, show that the person answering was the one called[.]" M.R.E. 901(b)(6)(A). Chase asserts that because Thompson's testimony did not identify Church as the person on the other end of the call, the recording was not properly authenticated.

¶40. Chase overlooks Rule 901(b)(9), which permits authentication of a process or system through "[e]vidence describing a process or system used to produce a result and showing that the process or system produces an accurate result." *Broadhead v. State*, 981 So. 2d 320, 326-27 (¶24) (Miss. Ct. App. 2007). In *Broadhead* this Court addressed a similar authentication issue when a Jackson County Sheriff, Detective Raider, authenticated a telephone recording of the defendant. *Id.* at 327 (¶25). At trial, Raider (1) discussed his knowledge of the jail's telephone system and how it recorded inmate calls and (2) identified Broadhead's voice from the recording. *Id*. Although Raider was not the party responsible for the phone system at the time of the recording, the Court found his authentication was sufficient. *Id*.

¶41. Similarly, Thompson testified in detail about the operation of the jail's telephone system. Thompson provided a detailed description of the process employed to assign each inmate an identification number (PIN); record the inmate telephone calls; and her training on how to retrieve the recordings from the telephone system's online database. Thompson further testified that she was familiar with Chase's voice and identified him as the inmate voice on the telephone calls. Considering with the Court's holding in *Broadhead*, Thompson's testimony was sufficient to establish authentication of the recordings. Accordingly, we find this issue is without merit.

## VII. Jury Instruction Number 5

¶42. Chase complains that the trial court committed reversible error when its oral recitation of Jury Instruction Number 5 did not mirror the written instruction exactly. This issue though, was not preserved for appellate review. The record does not reflect any objection during the reading of the jury instructions or at any point as relates to Jury Instruction Number 5. "[I]n order to preserve a jury instruction issue for appellate purposes, a defendant must make specific, on-the-record objections to proposed instructions." *Young v. State*, 119 So. 3d 309, 314 (¶14) (Miss. 2013). Chase's failure to object at the trial renders this issue procedurally barred.

¶43. Notwithstanding the procedural bar, we find Chase's argument is without merit. Jury Instruction Number 5 stated:

> The court instructs the jury that acts testified about concerning the allegations of prior domestic assaults are acts relating to charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. You cannot and must not simply infer that the defendant acted in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial.

In its reading of the jury instruction at issue, the court explained as follows:

> The court instructs the jury that acts relating to charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. You cannot and must not simply infer that the defendant acted in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial.

¶44. Chase contends that the court's failure to specifically name "prior domestic assault" as the crime the defendant was "not presently on trial for" and cites *Johnson v. State*, 908 So.

2d 758 (Miss. 2005). In *Johnson*, the Mississippi Supreme Court found reversible error where jury instructions given were in "hopeless conflict." *Id.* at 764 (¶21) (emphasis omitted). Reviewing the court's oral instructions juxtaposed with the written instructions given to the jury, we find no notable conflict. Thus, the issue is without merit.

### VIII. Lesser Included Offense Instruction

¶45. Chase also argues that he was entitled to a jury instruction for the lesser-included defense of simple domestic assault. However, no such instruction was sought by Chase at trial. Because Chase failed to offer any lesser-included offense instruction for the court to consider, this claim is waived. *Walker v. State*, 671 So. 2d 581, 597 (Miss. 1995).

### IX. JNOV

¶46. Finally, Chase claims that the trial court erred by denying his motion for a JNOV or, in the alternative, a new trial. "A denial of a judgment notwithstanding the verdict is subject to de novo review on appeal." *Kirk v. State*, 160 So. 3d 685, 695 (¶24) (Miss. 2015) (citing *Daniels v. State*, 107 So. 3d 961, 963 (¶10) (Miss. 2013)). "A motion for JNOV is a challenge to the legal sufficiency of the evidence." *Id.*

¶47. When deciding the legal sufficiency of the evidence, "this Court will affirm the denial of a motion for JNOV if there is substantial evidence to support the verdict." *Id.* "Should the facts and inferences considered in a challenge to the sufficiency of the evidence point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty, the proper remedy is for the appellate court to reverse and render." *Id.* (internal quotation marks omitted)

17

(quoting *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005), *overruled on other grounds by Little v. State*, 233 So. 3d 288 (Miss. 2017)).

¶48. Based on the testimony and viewing the evidence offered to support Chase's conviction in the light most favorable to the State, *Powell v. State*, 249 So. 3d 355, 361 (¶35) (Miss. 2018), and having thoroughly considered the Court's alleged errors, we find that sufficient evidence existed for a jury to find Chase guilty beyond a reasonable doubt of each element of the offense charged. Accordingly, we affirm Chase's conviction and sentence for domestic aggravated assault.

¶49. **AFFIRMED.**

**BARNES, C.J., GREENLEE, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR. CARLTON, P.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**